If a federal employee takes money to commit a fraud on the United States, is it always bribery? What does United States v. Leva say, and how do you get around that case? Constantine Kallas United States v. Leva says many things and decides that the meaning of the term corruptly in the statute does not I mean, Leva is basically like Birdsall, and so it is saying that the application of that subsection, the specific subsection that we are discussing here, as it stands, does not lead to an unreasonable or impractical result, and that the individual in Leva, who was an asylum officer, who prepared asylum papers and then asked, directed an inferior person, a clerk, to remove things from the computer so it could be set. Sotomayor We're familiar with the facts, but you get to the heart of the problem, which seems to me to be that Leva held that you don't need to be using your official position as an element of this bribery offense, and yet that's your primary argument. And I think that's possibly what Judge Sahari is asking you to focus on. Constantine Kallas Yes, so in connection with jury instruction number 7, which is one of the issues raised in the appeal, that issue regarding Leva was joined. The government cited to that its support for the jury instruction. Defense objected to it on the basis that it was illogical and a violation of due process. And so, at least with respect to that issue, if Leva is wrongly decided, which I think it clearly is, if it's used to be as broad as the government wants to use it here, which is that it does not matter that there is any connection at all, in any way, shape or form, to an actual thing that you do as a government official within the sort of scope or power or authority of your office. Breyer So are you asking us to reconsider or overrule Leva? Constantine Kallas I think that Leva could be limited to its facts. I think that you need to understand the rule in Leva in consideration of its facts. It actually isn't very different than many, many other cases that are deciding when an official is... Breyer Well, give me a sentence, if you can. Constantine Kallas Yes. Breyer In a sentence, how the facts of Leva differ from the argument you're making in this case, where the government official is in a position and basically the same thing happened in that case as this case. How is it different? In a sentence, can you... The case where it was the police officer who was doing the inquiries and being paid for that, and the court talked about how moonlighting was not a violation of the statute. And in this case, that's what Mr. Kallas was doing. He was essentially moonlighting and conducting an illegal, improper immigration scam. But he was not, other than in count six, doing something within his job or the power of his job or the ability because of his job in exchange for money. Breyer Sure he is, isn't he? Isn't he using his job to accomplish this? In part. For example, he's getting files and he's getting records and information that he couldn't possibly get were he not in this position. So isn't he used... I'm joining issue on your ballpark and I don't agree I should be on it even, but that's not the point there. The point is, in this case, he indeed is using his official position and he's getting bribed and he's accomplishing what he's doing for the people bribing him, partly because of his official position. Isn't he? Can you answer this question? Yes. He did steal A files. They found those in the safe. Two of them are related to two of the individuals that are at issue in the disputed bribery council. And he accessed secure databases. And he accessed secure databases. And he portrayed himself. And he flashed credentials and he wore ice clothing and a hat. What more do we need? And he wrote a letter to the Oregon Department of Corrections. It sounds like you're arguing for the other side. Because those things make it just like Leyva. Valdez? No. Like Leyva. Like Leyva. Or even more so. So Mr. Callis is the person being bribed. And Fernandez and other cases clearly say that it is the agreement that has to happen before the act. And he accessed one of the A files before he ever engaged in any agreement or received any money or had that discussion with the alien. And with regard to Clara Camacho. How does that matter? Suppose you gather up, you're a public official and you gather up all your stuff and then you go to somebody and say, I've got all this great stuff. You want to pay me for it? I mean, the gathering up doesn't have to happen after. Your Honor, you're exactly right. But my point, which I will not belabor because I think it is more than sufficiently addressed in the briefs, is that wasn't what the agreement was. From the alien's perspective, they thought they were buying some kind of influence from someone holding himself out as an immigration official. And he was somehow going to use his authority to do something, at least according to the indictment. But what actually happened is they had this garden variety immigration fraud scheme where they submitted the PIRM certificate for foreign labor certification and then they submitted the... Well, it's garden variety if it's somebody else. You know, if you picked a random person walking down the street and they did the same thing but they work for Safeway, you're right. There's no bribery involved. But with all the facts that you just laid out, you know, it changes the mix. Well, what if what he had done was tax fraud? But he didn't. He did immigration fraud and that was his job. It was his job, but it was not his job to submit those applications. His job was to go to court and have aliens removed. That was his job. And with respect to count six, that was bribery. He received money to do something that he actually did for his job and he, you know, lied to the court and said that she was cooperating with the government and he was paid money to do that. That is a bribe. The quid pro quo was enjoined with respect to something he did. Well, that's why I said I'm not sure I even want to be in your ballpark because that's just, again, it's just ignoring what the statute says. The statute doesn't require all that stuff. The statute just says he's a public official and he's engaging, he's engaging in, how do you put it? He's committing or aiding and committing a fraud or an opportunity to commit fraud on the U.S. government. That's it. Seems to me he falls right within that. Unless you go into your ballpark and say, well, yeah, but it doesn't matter because there could be some strain. It might reach very far. Yeah, it might reach far. Maybe if I decide to go out and commit something to defraud the government, they can charge me with that. So what? I understand. I mean, we can't say Congress can't make that a crime, I suppose. I think that's true. Congress probably could make that a crime, but that is not a, given Sun Diamond's discussion of using a scalpel instead of a meat ax when we interpret statutes in this section of the code. I think that that is definitely a grossly overbroad interpretation of the bribery statute because it goes beyond the specific quid pro quo of offering him money to do something he's able to do because of his job. Not necessarily an official duty, not necessarily an official act, but something he has the power to do because of his job. Counsel, you're down to a minute. Yes. Did you want to save some rebuttal time? I actually just wanted to briefly touch on procedural reasonableness. I want to point out that Ms. Callis was sentenced by a different judge, and so any suggestion that somehow this wasn't about unwarranted disparities I think falls short of the mark. Thank you. Good morning, Your Honors. May it please the Court, Margaret Carter on behalf of the United States. The government submits that LABA is controlling here, although in its briefs the defendant tries to limit the holdings of LABA to this concept of the word corruptly as opposed to the fraud prong set forth in Section 201B2B. LABA is not so narrow. What happened in that case was that the defendant proffered a definition of corruptly that included the rule that this defendant wants the court to adopt here, that the fraud had to involve an official act or use of the defendant's official position. But what the court in LABA did, even though that defendant had framed it in terms of the word corruptly, is it looked at the B2B, the 2B2, the fraud prong in the context of the other two prongs of the statute and interpreted that and determined that the plain meaning of that fraud prong was that all that was required was a fraud on the United States. Maybe you can answer your opponent's question, which really was how tethered or untethered must it be. For example, could a defendant, an ICE attorney, was prosecuted for bribery because he assisted a legal resident in cheating on his or her tax returns in exchange for money? Is that sufficient? How far do you go? Well, obviously, Your Honors, that is not this case. This case is very tied to the facts of LABA in which you had an asylum officer who was submitting false asylum and work authorization applications for aliens. The same thing here where you had an immigration prosecutor submitting false applications. But to answer Your Honor's question, I think this is actually addressed in the legislative history that the defendant cited, and specifically the House report from 1961 that addresses a version that was before Congress, but which was not ultimately adopted, that sort of mashed together what eventually became three separate prongs. It defined official act to include a fraud on the United States and also a violation of duty. And the defense cites a portion of the OLC's comments regarding that particular version in which the OLC raises an issue like the one Your Honor raises of an FCC official who helps a friend commit tax fraud and says essentially to Congress, let's be clear, this could cover that. Are you sure that that's what you want to do? If so, what we suggest is split it out into three separate prongs and also perhaps adopt a corruptly or some other kind of heightened intent requirement so that a court later on doesn't narrow it because it is broad. And in fact, that is what Congress did. And I think that it's very clear both from the plain meaning of the statute and from the legislative history that Congress intended this bribery statute to sweep broadly. So your answer is yes. It is. I don't think the court in any way needs to reach that because I think the facts of this case are so very similar to Leyva. And although Leyva in discussing those facts said that it was undisputed that the crime did not involve the use of the defendant's official position, I think that there clearly was a nexus, which is the test that this defendant asked this court to adopt because as Your Honors observed, it was an asylum officer committing immigration and asylum fraud. Here we've got an immigration prosecutor committing immigration fraud and also violating his official duty and also taking various official acts in order to do so. And so I think here, even if the court was to adopt a defendant's test, which I think is precluded by Leyva, we would still meet it. Would you respond briefly, before you're out of time, to the question about the procedural, alleged procedural error in sentencing? Certainly. Defendant's suggesting, if I may, that you had two different judges. You had the co-defendant's wife, who only got 48 months, and this defendant got 212 months. Did the district court commit some error, or did it explain the situation sufficiently? I think the district court certainly addressed disparities in sentencing this defendant, both with regard to defendant's wife, because there was this lengthy litigation regarding recusal of the probation officer. So while defendant's wife had not yet been sentenced, there was a PSR for her and a recommendation letter that came to a much lower recommendation. That issue was briefed in this motion. The government submits that it was not re-raised again at the sentencing hearing in quite the way that defendant characterizes it in its briefs, but it was certainly raised the same day as the first sentencing hearing in this recusal motion. And the court essentially found that the two defendants were not similarly situated because, among other things, this defendant was the public official in this situation. And that, under the sentencing guidelines, is a major issue. Also, the court noted, and the parties noted, that Maria Callas would play a major role and pled guilty to many different, to different crimes and did not plead guilty to kind of the panoply of crimes that this defendant did, which also included this whole other workers' compensation fraud scheme. He had a number of other counts against him that his wife did not have. Right. And it included aggravated identity theft, too, which carries a mandatory two-year additional penalty that's supposed to stack on top. So, for all of those reasons, the court found that the two were not similarly situated. I think, in some ways, defendant is trying to hinge this procedural reasonableness argument on maybe some of the comments of the district court not being exactly how the defendant would have liked it to be addressed, but I don't think that's what's required. I think that what's required is looking at the total record, and particularly because we are on, there was no objection here. You know, I think that what we've got here is that the court looked at it. It may not have used the exact words, but it certainly considered it. It looked at disparities with regard to Ms. Callas, and it looked at disparities with regard to other public officials and said that it didn't find that any of the other analog cases presented by the defense were, in fact, similarly situated to this defendant. I'd also like to just briefly address for the court the prosecutorial misconduct allegations. Here, I think, again, we are on plain error review, and the isolated comments, which appear essentially in the middle of dozens of pages of transcript of oral argument, do not in any way constitute misconduct, nor would they on plain error review affect, did they affect this defendant's substantial rights. With regard to the argument that the prosecutor's misconduct somehow inflamed the passions of the jury, many of the defendant's arguments point to references to defendant's official position, to corruption, and to violations of duty, including violations of public trust and oath of office. And I would just say in response to that, Your Honors, that this is a bribery case, where the government has to prove, A, that this defendant was a public official, B, that he acted with corrupt intent, and for the third prong of 201, the violation of duty prong, has to prove violations of duty. So all of these comments were directly relevant to the crimes charged, and directly tied to the evidence. Moreover, if you look at other cases where there may have been rhetorical flourishes about our rights, or constitutional standards, such as in the Coons Civil Rights case, or in the Wilkes bribery case, this court has found that there was no misconduct. So why don't you look at the one that's sort of strange, the reasonable doubt discussion. Certainly. Well, I assume that what Your Honor is referencing here is not the many references to the use of common sense, because I think the law is fairly clear that that's appropriate and acceptable to do. I'm referring to, don't let him use reasonable doubt as a shield to prevent you from reviewing the evidence. Right. Well, I think that here, again, that's one comment, and take it in the full panoply of even the rebuttal argument, it's very clear that the prosecutor did not intend the jury to disregard the reasonable doubt standard, but rather to find that the mountain of evidence presented in the case actually met the reasonable doubt standard, and that when that evidence was evaluated in light of common sense, that the jury could conclude that, in fact, the reasonable doubt standard is met. And I would note that, especially on plain error review, we're not to look at the most pernicious possible connotation of a single remark, but rather to look at it in context. And here, the prosecutor very clearly said that the court will instruct you on reasonable doubt, and that there's a mountain of evidence to take you over that hurdle. When it spoke of the shield also, that was in light of some of the comments, that was in light of sort of explaining that it's not impossible to overcome the burden of reasonable doubt. And it's not mysterious that it's used in criminal cases every day. I think when taken in its context, that portion is best interpreted as saying reasonable doubt is a very high standard, but it is not an impossible standard to overcome. It's not mysterious. You shouldn't let it scare you off from evaluating the evidence. Your time has expired. Thank you, counsel. Ms. Ivins, you have a little time remaining. At the time the district court imposed the sentence, the court did not discuss the disparity between Mr. Callas' sentence and the sentence of his wife. Government counsel is correct that there were, you know, two separate days of discussion, et cetera, but when he actually went to the point where he said, I'm now imposing the sentence and here's the reasons for my sentence, he does not touch on that at all. And if you look at the two cases, there are, you know, accounted for differences. She got the two-point reduction for acceptance and responsibility, or three points off for acceptance and responsibility. She got two points off for minor role. I mean, if you go through all of that and all of the accounting that needs to happen, I think that at a minimum the judge needed to discuss the fact that she pled guilty to count one, which was an even broader version of the count one, which was the massive conspiracy, which included everything. The differences between their two cases included, government counsel is correct, workers' compensation fraud. Number of counts. A number of counts. And the roles that they played. But the judge said that he thought they were essentially, you know, equal in culpability at ER 29. So from Judge Hatter's point of view, he has two people at his point of view who are essentially equally culpable. And if that's true, he needed to engage. It was procedural error for him not to engage and discuss that issue. Thank you, counsel. Thank you. We appreciate the arguments that both of you have presented today. The case just argued is submitted and we are adjourned for this morning's session.
judges: Zouhary, Fernandez, Graber